[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 111)
On June 4, 1999, the commissioner of the department of transportation filed a notice of condemnation and assessment of damages for property owned by Tuck-It-Away Bridgeport, Inc. On November 3, 1999, Tuck-It-Away Bridgeport filed an appeal and application for review of statement of compensation pursuant to General Statutes § 8-132. The clerk of the court placed the appeal and application in the same file, bearing the same docket number as the original notice of condemnation. The appeal alleges that the compensation determination by the commissioner does not represent just compensation for the taking of Tuck-It-Away Bridgeport's property. by eminent domain. The commissioner assessed damages at $359,000.
The commissioner filed an answer and special defenses alleging in the fourth special defense that the court lacks subject-matter jurisdiction because Tuck-It-Away Bridgeport failed to attach a summons to its appeal and order of notice, which was served on the commissioner by a sheriff on November 1, 1999. Tuck-It-Away Bridgeport now moves to strike the fourth special defense on the ground that it is legally insufficient. CT Page 10412
A motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court. The court must take the facts to be those alleged in the complaint and construe the complaint in the manner most favorable to sustaining its legal sufficiency. Moreover, what is necessarily implied in an allegation need not be expressly alleged. Lombard v. Edward J. Peters, Jr., P.C.,252 Conn. 623, 626, ___ A.2d ___ (2000). A plaintiff can move to strike a special defense. Nowak v. Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1978); see also Connecticut National Bank v. Voog, 233 Conn. 352, 254-55,659 A.2d 172 (1995).
Tuck-It-Away Bridgeport argues that the commissioner's fourth special defense is legally insufficient because the statute does not require a summons to be attached to the notice of appeal. Tuck-It-Away Bridgeport further argues that, in fact, it is the clerk of the Superior Court who causes notice to be sent to the commissioner. In response, the commissioner argues that an appeal from a condemnation assessment is a de novo appeal, and, therefore, the appeal is a new civil action requiring service of process, including a properly executed writ of summons.
General Statutes § 8-132 provides in relevant part:
 "Any person claiming to be aggrieved by the statement of compensation filed by the redevelopment agency may, at any time within six months after the same has been filed, apply to the superior court . . . for a review of such statement of compensation . . . and said court . . . after causing notice of the pendency of such application to be given to said redevelopment agency, shall appoint a state referee to make a review of the statement of compensation."
Appeals to courts from administrative agencies exist only under statutory authority. A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. Office of Consumer Counsel v. Dept. of Public Utility Control,234 Conn. 624, 640, 662 A.2d 1251 (1995).
The commissioner's interpretation regarding de novo review is misplaced.
"In determination of the fair market value, the trial court in a condemnation appeal hears the matter de novo . . . and makes an independent determination of value and fair compensation in light of all the circumstances CT Page 10413 . . . ." (Citations omitted; internal quotation marks omitted.) Gasparri v. Dent. of Transportation, 37 Conn. App. 126, 655 A.2d 268 (1995).
Hence, the condemnation appeal is not de novo, but rather that the property's valuation is reviewed de novo. Id. at 129-130.
Furthermore, an applicant need not initiate a new civil action. Although applications for review of statements of compensation have been initiated by way of the filing of a separate action in the Superior Court, the statute does not require such procedure. Killingly v. Wells,18 Conn. App. 508, 512-13, 558 A.2d 1039, cert. denied, 212 Conn. 807,563 A.2d 1357 (1989).[1] The language of § 8-132 simply does not mandate the initiation of a separate action to test the adequacy of a condemnation award. Id. The statute involved requires only that a condemnee "apply" to the Superior Court, and, thereafter, the court will cause "notice of the pendency of the application to be given to said redevelopment agency." Id. Thus, under the statutory scheme of § 8-132, the court bears the responsibility for giving notice to the town, a responsibility normally associated with one who initiates a cause of action. Id.
Indeed, Killingly, supra, 18 Conn. App. 508, led to the initiation of policy memo CV-97-33, which created a procedure for the Superior Court clerks to follow when an appeal is taken from a statement of compensation pursuant to General Statutes § 8-132. Policy memo CV-97-33 provides:
 "Upon the filing of a statement of compensation, pursuant to [General Statutes §] 8-29 or an assessment of damages . . . the clerk's office is to collect a fee of $2.00 as required by [General Statutes §] 52-259 . . . . A civil docket number is to be assigned to the case and a civil file is to be created. . . .
 "Upon the filing of the application for reassessment of damages and benefits or the application for review of the statement of compensation, the application is to be placed in the existing court file containing the assessment of damages and benefits or the statement of compensation. As a result of the above change in procedure, only one court file will exist."
The commissioner argues that the fourth special defense is legally sufficient because policy memo CV-97-33 is procedurally improper based on reasoning in Bristol v. Milano, 45 Conn. Sup. 605, 732 A.2d 340 (1998). CT Page 10414 In Bristol v. Milano, the court, Bieluch, J., criticized the procedure set forth in Killingly v. Wells, supra, 18 Conn. App. 515, and policy memo CV-97-33. In Bristol v. Milano, the named plaintiff was the city of Bristol, and the named defendant's were the Milanos, the people whose property had been taken by eminent domain. See id. In an attempt to avoid confusion in its ruling on the merits of the case, the court explained how the parties' names had become reversed. See id., 606-13. The city of Bristol filed a statement of compensation to which the Milano's appealed. The clerk of the court, relying on Killingly and policy memo CV-97-33, placed the appeal in the same file. Judge Bieluch stated that this was contrary to long-standing procedure and policy in condemnation cases. See Bristol v. Milano, supra, 45 Conn. Sup. 607. As support for this position Judge Bieluch noted that the filing of a statement of compensation does not "originate a civil action." Judge Bieluch went on to say that Killingly v. Wells, and the policy memo were contrary to the holdings of two Supreme Court cases, Simmons v. State, 160 Conn. 492,280 A.2d 351 (1971), and Karp v. Urban Redevelogment Commission,162 Conn. 525, 294 A.2d 635 (1972).
In Simmons v. State, supra, 160 Conn. 492, the state condemned land belonging to Simmons for what was to become Bradley International Airport. The statement of compensation was docketed as condemnation No. 487, State v. Simmons. The Simmons' filed a plea to abate the condemnation proceeding. Eventually, the trial court, Radin, J., granted a demurrer. See Simmons v. State, supra, 160 Conn. 494. The Supreme Court in Simmons v. State was dealing with an appeal from another statement of compensation involving these two parties. See id., 494-95. The Supreme Court mentioned the plea in abatement only for the purpose of giving a full procedural history. In a footnote, the court noted that the filing of a plea in abatement and the eventual demurrer were procedurally improper because the filing of a statement of compensation does not "originate a civil action." Simmons v. State, supra, 160 Conn. 494 n. 1.
In Karp v. Urban Redevelopment Commission, supra, 162 Conn. 525 the condemnee, Karp, applied for a review of the Urban Redevelopment Commission's statement of compensation. The application for review was placed in a different file than the original statement. See id., 526-27. The Urban Redevelopment Commission filed a motion to erase because the plaintiff had filed the appeal more than six months after the statement of compensation had been filed and docketed. See id., 526. The motion was granted and the plaintiff appealed to the Supreme Court. See id. The Urban Redevelopment Commission asked the court to take judicial notice of the file containing the original statement. See id., 527. In the context of a discussion on the court's ability to take judicial notice of court files, the court quoted Simmons v. State that the filing of the statement of compensation does not "originate a civil action." Karp v. UrbanCT Page 10415Redevelopment Commission, supra, 162 Conn. 527.
In Simmons and Karp, however, the court did not state how to initiate a civil action in an appeal from a condemnation award. The situation in the present case is distinguishable because in Simmons and Karp the court stated that the mere filing of the statement of compensation in the clerk's office does not initiate a civil action. To that extent, this court agrees. See Karp v. Urban Redevelopment Commission, supra,162 Conn. 527 ("`[T]he docketing of the statement of compensation in the clerk's office of the Superior Court did not originate a civil action.'"). Nevertheless, in the present case, not only was the statement of compensation filed and a docket number issued, but the aggrieved party, Tuck It Away Bridgeport, complied with all of the necessary procedure pursuant to § 8-132 in initiating its appeal. But what distinguishes the present case from Simons and Karp is that the clerk of the court, in accordance with § 8-132, gave the commissioner notice of the application for reassessment. This court concludes that in condemnation proceedings the operative event which originates this type of action is when the court through its clerk gave notice to the commissioner of the application for reassessment pursuant to § 8-132. See Killing v. Wells, supra, 18 Conn. App. 513.[2] Accordingly, this court respectfully declines to follow the reasoning and recommendation set forth in Bristol v. Milano, supra. 45 Conn. Sup. 605.
Based on the foregoing reasoning, the court hereby GRANTS Tuck-it-Away Bridgeport's motion to strike the commissioner's fourth special defense.
MELVILLE, J.